UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 12-19-12
```

EDGARDO BUITRAGO,

       Plaintiff,

-v-

THE CITY OF NEW YORK,

       Defendant.

No. 11 Civ. 8551 (RJS) (DCF)
<u>ORDER ADOPTING REPORT
AND RECOMMENDATION</u>

<u>RICHARD J. SULLIVAN</u>, District Judge:

  On November 23, 2011, *pro se* Plaintiff Edgardo Buitrago initiated this action by filing his Complaint against Defendant New York City Department of Correction pursuant to 42 U.S.C. § 1983. Plaintiff alleged a violation of his constitutional due process rights from a three-month delay in transferring him from Rikers Island to a drug treatment program at the Willard Drug Treatment Campus. (Doc. No. 2.) By Order dated December 12, 2011, the Court dismissed Plaintiff's claims against the New York City Department of Correction and, pursuant to Federal Rule of Civil Procedure 21, substituted the City of New York as Defendant. By Order dated January 19, 2012, the Court referred this matter to the Honorable Debra C. Freeman, Magistrate Judge. (Doc. No 14.) Following a telephonic case management conference at which both parties appeared, Judge Freeman set a briefing schedule for Defendant's contemplated motion to dismiss. (Doc. No. 18.) Defendant then timely filed its motion on May 18, 2012. (Doc. No. 19.) On July 17, 2012, the Court received a letter from Plaintiff, dated July 13, 2012, informing it that Plaintiff is in custody and requesting a stay of proceedings until April 2013, when he would be released. (Doc. No. 24.)

On November 13, 2012, Judge Freeman issued a Report and Recommendation (the "Report") denying Plaintiff's request for a stay and, liberally construing Plaintiff's July 13 letter to raise all possible arguments on his behalf in opposition to Defendant's motion, recommending that the Court grant Defendant's motion to dismiss the Complaint with prejudice. (Doc. No. 25.) In the Report, Judge Freeman advised the parties that failure to file timely objections to the Report would constitute a waiver of those objections.[1] (Doc. No. 33 at 16). No party has filed objections to the Report, and the time to do so has expired.

When no objections to a report and recommendation are made, the Court may adopt the report if there is no clear error on the face of the record. *Adee Motor Cars, LLC v. Amato*, 388 F. Supp. 2d 250, 253 (S.D.N.Y. 2005); *La Torres v. Walker*, 216 F. Supp. 2d 157, 159 (S.D.N.Y. 2000). After reviewing the record, the Court finds that Judge Freeman's well-reasoned and careful Report is not facially erroneous. Accordingly, the Court adopts the Report in its entirety and, for the reasons set forth therein, grants Defendant's motion to dismiss with prejudice the Complaint in its entirety. The Clerk of Court is respectfully directed to terminate the motion located at Doc. No. 19 and to close this case.

SO ORDERED.

Dated:   December 18, 2012
         New York, New York

RICHARD J. SULLIVAN
UNITED STATES DISTRICT JUDGE

---

[1] Although the Report failed to cite to 28 U.S.C. § 636(b)(1) and Federal Rules of Civil Procedure 72 and 6(a) for this proposition, as required by *Small v. Secretary of Health and Human Services*, 892 F.2d 15, 16 (2d Cir. 1989) (per curiam), that omission is non-material due to the clear notice of waiver otherwise provided in the Report, *see Frank v. Johnson*, 968 F.2d 298, 300 (2d Cir. 1993). Moreover, Plaintiff has not filed any objections to the Report, either within the allotted time or since.

2

<u>A copy of this Order was mailed to:</u>

Edgardo Buitrago
117 Preston Avenue
West Harrison, NY 10604

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
EDGARDO BUITRAGO                          :

                       Plaintiff,         :    11 Civ. 8551 (RJS) (DF)

        -against-                         :    REPORT AND
                                               RECOMMENDATION
THE CITY OF NEW YORK,                     :

                       Defendant.         :
-----------------------------------------------------------X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11/13/12

**TO THE HONORABLE RICHARD J. SULLIVAN, United States District Judge:**

In September 2010, *pro se* plaintiff Edgardo Buitrago ("Plaintiff"), facing potential revocation of his parole, was offered the alternative of serving 12 months in custody or 90 days in a drug treatment program at the Willard Drug Treatment Campus ("Willard").[1] Although, at the time, Plaintiff opted for the drug treatment program, defendant the City of New York ("Defendant" or the "City") allegedly failed, for more than 90 days, to transfer him into State custody, so that he could be placed in the program. Claiming that this delay violated his constitutional due process rights, Plaintiff commenced this action under 42 U.S.C. § 1983. Now before the Court is Defendant's motion to dismiss the Complaint (Dkt. 19) on the grounds that Plaintiff had no constitutional right to a timely transfer to Willard and that he has failed to state a claim for municipal liability. For the reasons discussed below, I recommend that Defendant's motion be granted.

---

[1] "Willard DTC is a drug treatment center operated by the New York State Department of Correctional Services in conjunction with the Division of Parole and licensed by the New York State Division of Alcohol and Substance Abuse Services." Frequently Asked Questions, NYS Department of Corrections and Community Supervision, https://www.parole.ny.gov/faq.html (last visited 11/8/12).

## BACKGROUND

### A. Factual Background

At a parole revocation hearing on September 28, 2010, Plaintiff pleaded guilty to violating parole.[2] The administrative law judge ("ALJ") presiding over that hearing ordered Plaintiff to serve a "time assessment" of 12 months.[3] (State Habeas Decision, at 1.) At the same time, the ALJ offered Plaintiff, as an alternative, the opportunity to enter a 90-day substance abuse treatment program at Willard:

> [P]arolee is sentenced to 12 mos. with an alternative agreed by parolee as follows: if you enter and complete a 90 day drug treatment program conducted by NYS DOCS, this sentence will be forthwith modified to revoke/restore, time-served, you will be released from State prison and returned to parole supervision in the community, Parolee otherwise to serve 12 mos.

(*Id.* (internal quotation marks omitted).)

Thereafter, the New York State Division of Parole deemed Plaintiff "state ready," but the New York City Department of Correction ("DOC") continued holding Plaintiff at Rikers Island

---

[2] This fact is taken from a New York Supreme Court Memorandum and Judgment (a copy of which is attached to Plaintiff's Complaint in this action), denying Plaintiff's petition for a state writ of *habeas corpus*. (*See People v. Buitrago*, Index. No. 21,070-11 (Supt. Ct. Wyoming Cnty. May 9, 2011) (slip op.) ("State Habeas Decision"), annexed to Complaint, dated Nov. 23, 2011 ("Compl.") (Dkt. 2).) For purposes of deciding the present motion, the Court considers the contents of this Memorandum and Judgment to be incorporated into the Complaint, and accepts the facts set forth therein as true.

[3] "A time assessment is a period of time which is fixed as a result of a final parole revocation hearing and which determines a date by which time the parole violator will be eligible for re-release." 9 N.Y.C.R.R. § 8002.6(a). "All parole violators identified as eligible for re-release as defined by subdivision (a) of section 8002.6, will be re-released to parole supervision as soon as practicable after completion of the delinquent time assessment imposed irrespective of whether they are in State or local custody." 9 N.Y.C.R.R. 8002.6(c)(1).

2

under the parole warrant. (*Id.*) There is nothing in the record that explains why this occurred. Still at Rikers Island 93 days later, Plaintiff filed a *habeas corpus* petition in state court on December 30, 2010, and he was assigned counsel. (*See id.*) On January 21, 2011, while that petition was pending, Plaintiff was finally transferred to state custody, and he was offered placement at Willard on February 2 and 3, 2012. (*Id.* at 1-2.) Refusing both times, Plaintiff served the 12-month time assessment. (*Id.* at 2.)

The state court denied Plaintiff *habeas corpus* relief, distinguishing Plaintiff's case from those of parolees who, rather than being given time assessments, had their parole simultaneously "revoked and restored" with completion of Willard as a parole condition:

> These cases are distinguishable from the petitioner's case, however, because these cases involved parolees who were not given time assessments upon the revocation of their parole. Rather, after being found to have violated their parole conditions, they were restored to parole supervision with the added condition that they complete the Willard program. Because they were detained after being restored to parole, their prolonged detentions were found to be illegal.
>
> The petitioner . . . received a 12 month delinquent time assessment. Participation in the Willard program was offered as an alternative (*see* 9 NYCRR §8005.20[c][1]). It is evident that all parties expected the 12 month time assessment to be rendered a nullity once the petitioner completed the Willard program, but the fact remains that the administrative law judge revoked the petitioner's parole and imposed a time assessment. Given this, his current incarceration is not illegal. The petitioner may have other remedies available to him for his detention by the New York City Department of Corrections from October 1, 2010 to January 21, 2011 . . . , but he is not entitled to habeas relief on this record.

(*Id.* at 2 (citations omitted).)

3

B.     **Procedural History**

Plaintiff filed a Complaint in this Court on November 23, 2011, alleging that the delay in transferring him to State custody, so that he could be placed in Willard, violated his federal due process rights and entitles him to money damages. (*See generally* Compl.) Initially, Plaintiff named the DOC as the sole defendant in this case, but the Court dismissed Plaintiff's claims against that entity and substituted the City, under Rule 21 of the Federal Rules of Civil Procedure. (Dkt. 7.)

During a March 20, 2012 telephonic case management conference, at which Plaintiff appeared, Defendant expressed an intent to move to dismiss the Complaint, and the Court set a schedule for that motion. (Dkt. 18.) In accordance with that schedule, the City timely filed its motion to dismiss on May 18, 2012. (*See* Notice of Motion, dated May 18 2012 (Dkt. 19); *see also* Memorandum of Law in Support of Defendant's Motion to Dismiss, dated May 18, 2012 ("Def. Mem.") (Dkt. 20).) Plaintiff's opposition to that motion was then due on June 29, 2012. (Dkt. 18, ¶ 1(b).)

After the March 20 conference, however, Plaintiff showed some lack of understanding as to what the Court had directed him to do. By letter to the Court dated May 10, 2012 (Dkt. 22), which was still prior to Defendant's service of its motion papers, Plaintiff stated that he "would not be able to make it to court on May 18"[4] and asked if he could "continue [his] claim until 2013" (*id.*). This led the Court to issue another Order, dated May 30, 2012, in which the Court explained to Plaintiff that he was not required to appear in Court on May 18, and that, if Plaintiff wished to oppose Defendant's motion, he should serve and file written opposition papers by

---

[4] Plaintiff is currently being detained at Rikers Island, but that detention is unrelated to the events alleged in his Complaint in this action.

4

June 29, as originally ordered. (Dkt. 23, ¶ 1.) The Court further informed Plaintiff that, if, despite the fact that his appearance in court was not required at this time, he still wished the Court to stay these proceedings, he should write again to the Court, setting forth good cause for a stay. (*Id.* ¶ 3.)

The Court did not receive any further submission from Plaintiff until July 17, 2012, when it received a second letter from him, dated July 13, 2012. (Dkt. 24.) In this second letter, Plaintiff wrote, in relevant part:

> Now Your Honor what I[']m saying is I don't think [it] is fair that they close my claim against the City of N.Y. The lawyer[s] from 100 Church Street are trying to close my case[.] At this time Your Honor my hands are ti[ed.] I cannot defend myself. Your Honor would your respect [*sic*] I would like for you to help me with this matter please. I went th[ough] a lot of pain when I was incarcerated on my last violation[.] I got a lot of anxiety because of what happen[ed] from 8/30/2010 to 9/1/2011. The City violated my rights[.] I don't think [it] is fair for them to close my case[.] I do not get out until April 12, 2013[.] What I am asking [is] if my claim can stay open until I get release[d] from jail. I would highly appr[ec]iate[] [it] if you can help with this situation.

(*Id.*)

As Plaintiff's letter does not set forth good cause for a stay of these proceedings,[5] this Court will liberally construe Plaintiff's submission as opposing the motion to dismiss and will consider all possible arguments on his behalf.

---

[5] "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936); *see, e.g., Hunter v. AG for Cal.*, 1:10-cv-0096-AWI-MJS (PC), 2011 U.S. Dist. LEXIS 137488, at *1-2 (E.D. Cal. Nov. 29, 2011) (citing *Landis* and denying plaintiff's motion to stay his civil rights case before the court until he is released from prison, as "[t]he [c]ourt cannot stay an action for the convenience of a party").

## DISCUSSION

### I.   RULE 12(b)(6) STANDARDS

In deciding a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court "accept[s] as true all factual statements alleged in the complaint and draw[s] all reasonable inferences in favor of the non-moving party." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007) (citation omitted); *accord Jaghory v. New York State Dep't of Ed.*, 131 F.3d 326, 329 (2d Cir. 1997) (citations omitted). The Court's function on a motion to dismiss is "'not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient.'" *Velez v. Levy*, 401 F.3d 75, 80 (2d Cir. 2005) (quoting *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir. 1985)).

Additionally, "[i]t is well established that the submissions of a *pro se* litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted); *see also Hughes v. Rowe*, 449 U.S. 5, 9-10 (1980) (noting that a *pro se* party's pleadings must be liberally construed in his favor and are held to a less stringent standard than the pleadings drafted by lawyers (citations omitted)). At the same time, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to defeat a motion to dismiss." *Achtman v. Kirby, McInerney, & Squire, LLP*, 464 F.3d 328, 337 (2d Cir. 2006) (citation omitted). Even plaintiffs who are proceeding *pro se* must comply with procedural and substantive rules, and, to survive a motion to dismiss, a *pro se* complaint, like any other complaint, "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)); *Bisson v. Martin Luther King Jr. Health Clinic*,

6

No. 07-5416-cv, 2008 WL 4951045, at *1 (2d Cir. Nov. 20, 2008). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

On a motion to dismiss, the Court is generally limited to reviewing the allegations in the complaint and documents attached to it or incorporated by reference. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-55 (2d Cir. 2002). The Court may, however, consider documents "'integral to the complaint'" or those that were necessarily relied on by the plaintiff in drafting the complaint. *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) (emphasis omitted) (quoting *Cortec Industries, Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991)).

## II.   VIABILITY OF PLAINTIFF'S CLAIM

### A.   The Alleged Due Process Violation

Defendant first asserts, in its motion, that Plaintiff has failed to state a Section 1983 claim because the delay in transferring him to Willard cannot be found to have constituted a due process violation.

"It is well established that in order to state a claim under § 1983, a plaintiff must allege (1) that the challenged conduct was attributable at least in part to a person acting under color of state law, and (2) that such conduct deprived the plaintiff of a right, privilege or immunity secured by the Constitution or laws of the United States." *Eagleston v. Guido*, 41 F.3d 865, 876 (2d Cir. 1994) (internal quotation marks and citations omitted). Section 1983 itself creates no substantive rights, but rather provides only a procedure for redress for the deprivation of rights established elsewhere. *Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985) (citation omitted).

7

In this case, Plaintiff is seeing vindication of his constitutional due process rights. Pursuant to the Due Process Clause of the 14th Amendment, "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. Amend. XIV; *see Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) (holding that a procedural due process violation arises under the 14th Amendment when a plaintiff has been deprived of a constitutionally protected interest in life, liberty, or property without due process of law); *Wright v. Krom*, No. 10 Civ. 3934 (CS) (GAY), 2011 WL 4501919, at *3 (S.D.N.Y. Apr. 26, 2011) (Report & Recommendation), *adopted by* 2011 WL 4526405 (Sept. 29, 2011). The Due Process Clause "protects the individual against arbitrary action of government." *Kentucky Dep't of Corrs. v. Thompson*, 490 U.S. 454, 459-60 (1989) (internal quotation marks and citation omitted). "[T]o state a procedural due process claim, a plaintiff must establish the deprivation of a 'protected liberty interest.'" *Moore v. N.Y. State Dep't of Corr. Servs.*, 26 Fed. Appx. 32, 33 (2d Cir. 2001) (quoting and citing *Arce v. Walker*, 139 F.3d 329, 333 (2d Cir. 1998)).

The Due Process Clause does not protect against "every change in the conditions of confinement having a substantial adverse impact" on inmates, *Sandin v. O'Connor*, 515 U.S. 472, 478 (1995), and, in general, prisoners have no constitutional basis to challenge changes in the terms of their confinement that are "within the normal limits or range of custody which the conviction has authorized the State to impose," *id.* (quoting *Meachum v. Fano*, 427 U.S. 215, 225 (1976)). For this reason, a prisoner who alleges a deprivation of a protected liberty interest must allege: (1) that his confinement or restraint created an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," and (2) that the state has enacted a regulation or statute which grants prisoners a protected liberty interest in remaining free from

8

that confinement or restraint. *See Sandin*, 515 U.S. at 483-84; accord *Vega v. Lanz*, 596 F.3d 77, 83 (2d Cir. 2010); *Romer v. Morgenthau*, 119 F. Supp. 2d 346, 356-59 (S.D.N.Y. 2000).

The Second Circuit has not set a bright-line rule as to when confinement becomes atypical. Instead, "[i]n order to determine whether a liberty interest has been affected, district courts are required to examine the circumstances of a confinement and to identify with specificity the facts upon which [their] conclusions [are] based." *Wright v. Coughlin*, 132 F.3d 133, 137 (2d Cir. 1998) (citations omitted). While administrators have broad discretion "over the day-to-day administration of the prisons, their actions may be scrutinized more closely when they have the potential effect of reducing the amount of time which an inmate will spend in custody or of radically transforming the nature of the custody to which the inmate is subject." *Klos v. Haskell*, 48 F.3d 81, 87 (2d Cir. 1995) (internal quotation marks and citations omitted; alteration in original).

In this case, Plaintiff complains of the City's "unjustifiabl[e]" delay in transferring him to State custody (Compl., at V), and of his resulting loss of the ability to give meaningful effect to his chosen alternative of completing the 90-day program at Willard (*id.*). Yet even accepting as true that the alleged delay occurred, and further accepting as true all other allegations of the Complaint, this Court finds that Plaintiff has failed to state a due process violation, under the governing law.

Prisoners have no right to early release prior to completion of a valid sentence. *See Greenholtz v. Inmates of the Neb. Penal and Corr. Complex*, 442 U.S. 1, 7 (1979); *McAllister v. N.Y.S. Div. of Parole*, 432 F. App'x 32, 33 (2d Cir. 2011) (summary order). "Neither the mere possibility of release, nor a statistical probability of release, gives rise to a legitimate expectancy of release on parole." *Berard v. Vt. Parole Bd.*, 730 F.2d 71, 74 (2d Cir. 1984) (citations

omitted). "To have an interest in parole that is protected by the Due Process Clause, a prisoner must have a legitimate expectancy of release that is grounded in the state's statutory scheme." *Barna v. Travis*, 239 F.3d 169, 170 (2d Cir. 2001) (per curiam) (citing *Greenholtz*, 442 U.S. at 11-13, *Berard*, 730 F.2d at 75; *Boothe v. Hammock*, 605 F.2d 661, 663 (2d Cir. 1979)). "The New York parole scheme is not one that creates in any prisoner a legitimate expectancy of release," *Barna*, 239 F.3d at 171 (citing N.Y. Exec. Law § 259-c.1), and the protections of the Due Process Clause are therefore inapplicable, *see id.*; *Duemmel v. Fischer*, 368 F. App'x 180, 182 (2d Cir. 2010); *Gordon v. Lemons*, 644 F. Supp. 2d 322, 329 (S.D.N.Y. 2009); *Howithi v. Travis*, No. 06 Civ. 3162 (BSJ) (MHD), 2008 WL 7728648, at *10 (S.D.N.Y. Sept. 16, 2008) (Report & Recommendation), *adopted by* 2010 WL 1685412 (Apr. 23, 2010); *see also Holcomb v. Lykens*, 337 F.3d 217, 224-25 (2d Cir. 2003) (holding that state statutes do not create federally protected due process entitlements to specific state-mandated procedures).

Moreover, prisoners have no constitutional right to participate in programs that might shorten their sentences or otherwise expedite their release. *See Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976); *Wolff v. McDonnell*, 418 U.S. 539, 556-58 (1974); *Abed v. Armstrong*, 209 F.3d 63, 66-67 (2d Cir. 2000); *Lee v. Governor of N.Y.*, 87 F.3d 55, 58 (2d Cir. 1996); *Pugliese v. Nelson*, 617 F.2d 916, 923 (2d Cir. 1980); *see also Harrison v. Fischer*, No. 08-CV-1327 (NAM/DRH), 2010 WL 2653629, at *7 (N.D.N.Y. June 7, 2010) (Report & Recommendation) (finding that prisoners lack a constitutionally protected liberty interest in eligibility for rehabilitative programs), *adopted by* 2010 WL 2653477 (June 29, 2010); *Brown v. Fischer*, No. 10 Civ. 3830 (LTS) (JCF), 2011 WL 4056302, at *5 (S.D.N.Y. Aug. 17, 2011) (Report & Recommendation), *adopted by* 2011 WL 4069663 (Sept. 12, 2011); *cf. Castellar v. Fed. Bureau of Prisons*, No. 07 Civ. 3952 (SLT) (CLP), 2009 WL 1515750, at *3 (E.D.N.Y. May 29, 2009)

(rejecting challenge to a policy to minimize time in a halfway house); *Hickerson v. Willingham*, No. 07-CV-3952 (CFD), 2006 WL 3422186, at *3, 4 (D. Conn. Nov. 28, 2006) (finding that petitioner had no liberty interest in obtaining a one-year sentence reduction for completion of a residential drug abuse treatment program).

As to the particular facts at issue here, Defendant cites two decisions, in which courts in this circuit have explicitly held that a delay in transferring prisoners to Willard does not state a federal due process claim. (*See* Def. Mem., at 5-7 (citing *Andujar v. Fischer*, No. 09-CV-489 (NAM/DRH), 2010 WL 786298 (N.D.N.Y. Mar. 2, 2010); *Cofield v. Lempke*, No. 10-CV-0284 (MAT), 2011 WL 2881951 (W.D.N.Y. July 15, 2011)).) In *Andujar*, a Section 1983 action, the plaintiff was sentenced to parole supervision contingent upon successful completion of the Willard program. *Andujar*, 2010 WL 786298, at *1. Due to a lack of space at Willard, the plaintiff in that case was imprisoned for 25 days before he was transferred. *Id.* The plaintiff then filed a *habeas corpus* petition in state court alleging that he should have been transferred to Willard within 10 days.[6] *Id.* The state court granted the petition and ordered the plaintiff to be restored to parole and released to community supervision. *Id.* The federal court, however, rejected Andujar's damages claim, holding that "a state rule of criminal procedure . . . does not create a liberty interest that is entitled to protection under the federal Constitution." *Id.* at *4.

---

[6] N.Y. Crim. Proc. L. § 410.91 "provides that if a court sentences a defendant to a sentence of parole contingent upon successful completion of the Willard program, the defendant is to be remanded immediately to a DOCS reception center and is not to remain there more than ten days before being accepted into the Willard program." *Ayala v. Williams*, 801 N.Y.S.2d 230 (Sup. Ct. 2005); *see McCants v. State*, 766 N.Y.S.2d 605 (3d Dep't 2003).

11

In *Cofield*, the petitioner challenged his custody in a *habeas corpus* petition under 28 U.S.C. § 2254. As in the case before this Court, the Willard program was not an original sentence, but rather was an alternate sentence imposed following a parole violation:

> If you are accepted at the program and if you complete the program then the twelve months will convert to a revoke and restore. If you are not accepted at the program or you refuse the program or you are removed for whatever reason then the twelve months is still running and the twelve months goes back to [the date] when the warrant was lodged against you.

*Cofield*, 2011 WL 2881951, at *1. The petitioner was not transferred to Willard for 72 days. *See id.* (also noting that, as a result of alleged misconduct, the petitioner was later removed from the program at Willard before completing it). Citing *Andujar*, the court denied Cofield *habeas* relief because the facts did not present a "redressable constitutional claim." *Id.* at *5.

This Court concurs with the holdings of *Andujar* and *Cofield* that the circumstances before it do not state a federal due process violation. On September 28, 2010, Plaintiff pleaded guilty to violating the terms of his parole, and he was sentenced to a 12-month time assessment. The ALJ simultaneously offered Plaintiff the opportunity to enter Willard and to be restored to parole supervision in the community, should he successfully complete the 90-day program. The record thus reflects that the ALJ intended to provide Plaintiff with the opportunity to reduce his sentence from 12 months to 90 days and that Plaintiff wished to avail himself of that option. This does not mean, however, that Plaintiff had a protectible constitutional interest in being transferred to Willard on a timely basis.

To the extent Plaintiff experienced frustration as a result of the alleged delay in his transfer, such frustration would be understandable. Accepting the allegations of the Complaint as true, the Court notes the obvious – that a delay of more than 90 days would have substantially

12

undermined the intent of the ALJ in offering Plaintiff an alternative sentence, as well as deprived Plaintiff of the opportunity for prompt substance-abuse treatment. The only question before this Court, however, is whether Plaintiff states a federal due process claim, and the Court concludes that he does not. There is no constitutional right to parole or to participate in programs that might shorten a sentence or expedite release. Given that Plaintiff was sentenced to 12 months, the time he spent at Rikers Island before he was transferred to State custody was pursuant to a valid sentence. That period of detention, therefore, was not illegal, and, accordingly, I recommend that Plaintiff's due process claim be dismissed.[7]

### B.   Potential *Monell* Liability

Defendant also argues, in its motion, that Plaintiff's allegations fail to implicate a municipal policy, custom, or practice, and that, for this reason as well, Plaintiff has not stated a claim against the City of New York. To recover against a municipality or municipal agency, a plaintiff must allege that the deprivation of his rights was caused by the execution of an official policy, custom, or practice, *see Monell v. City of New York Dep't of Social Servs.*, 436 U.S. 658 (1978); *Reynolds v. Giuliani*, 506 F.3d 183, 190-91 (2d Cir. 2007); *Walker v. City of New York*, 974 F.2d 293, 296 (2d Cir. 1992), and Defendant contends that Plaintiff has not satisfied this requirement here.[8]

---

[7] The state court that denied Plaintiff's *habeas corpus* petition suggested that Plaintiff "may have other remedies available to him for his detention" by DOC, and cited to *Morejon v. N.Y.S. Bd. of Parole*, 706 N.Y.S.2d 566 (Sup. Ct. Bronx Cnty. 1999) and *Nelson v. State*, 867 N.Y.S.2d 376 (Ct. Cl. 2008). (*See* State Habeas Decision, at 2.) This Court takes no position on whether Plaintiff would be entitled to relief under state law.

[8] A plaintiff may satisfy the 'policy, custom or practice' requirement by alleging the existence of "(1) a formal policy officially endorsed by the municipality . . . ; (2) actions taken by government officials responsible for establishing the municipal policies that caused the

13

If the only basis for Defendant's motion were that Plaintiff has failed to plead facts capable of showing a "policy or practice" by the City, this Court would recommend letting Plaintiff's *Monell* claim stand, *see Pedone v. City of New York*, No. CV-05-1629CPS, 2005 WL 2290357, at *5 (E.D.N.Y. Sept. 20, 2005) (allowing a claim based on facts similar to those alleged here to survive a *Monell* challenge), or would at least recommend affording Plaintiff the chance to amend his Complaint to plead facts sufficient to state a *Monell* claim. Indeed, there are multiple state court decisions indicating that delays in transferring prisoners to Willard are commonplace, and may well reflect a systemic problem that arguably constitutes a municipal policy, custom, or practice under *Monell*. *See e.g., People ex rel. Woelfle v. Poole*, 836 N.Y.S.2d 501 (Sup. Ct. Seneca Cnty. 2007); *State ex rel. Ryniec v. Willard Drug Treatment Campus*, 819 N.Y.S. 2d 851 (Sup. Ct. Seneca Cnty. 2006); *People ex rel. Davis v. Superintendent of Willard Drug Treatment Campus*, 816 N.Y.S.2d 698 (Sup. Ct. Seneca Cnty. 2006).

The controlling issue here, however, is not whether the City had a policy, or engaged in a practice, of routinely delaying transfers to Willard. Rather, the issue is whether Plaintiff has adequately pleaded an underlying due process violation. If, as determined above, Plaintiff has not stated a cognizable constitutional claim for the deprivation of a liberty interest, then this Court need not reach the "policy or practice" inquiry necessitated by *Monell*. *See Wolff v. Town of Mount Pleasant*, No. 06 Civ. 3864 (CS) (LMS), 2009 WL 1468691, at *4 (S.D.N.Y. Apr. 27,

---

particular deprivation in question . . . ; (3) a practice so consistent and widespread that it constitutes a custom or usage sufficient to impute constructive knowledge of the practice to policymaking officials . . . ; or (4) a failure by policymakers to train or supervise subordinates to such an extent that it amounts deliberate indifference to the rights of those who come into contact with the municipal employees." *Hernandez v. City of New York*, No. 00 iv. 9507 (RWS), 2004 WL 2624675, at *4 (S.D.N.Y. Nov. 18, 2004) (citations omitted).

14

2009) (Report & Recommendation) (noting that, where Rule 12(b)(6) dismissal of plaintiff's First Amendment claim was appropriate, the court "need not consider whether [p]laintiff's allegations against [defendant] satisfy the *Monell* standard for stating a claim for relief against a municipal entity"), *adopted in relevant part by* 2009 WL 1468620 (May 26, 2009); *Graziani v. County of Erie*, No. 03-CV-437S (F), 2011 WL 3902758, at *9 (W.D.N.Y. Sept. 6, 2011) (concluding that it need not consider whether plaintiff's due process claims had met the requirements of *Monell*, as the court had found sufficient grounds to grant defendants' motion for summary judgment solely on the merits).

Accordingly, I recommend that Plaintiff's Complaint against the City be dismissed in its entirety. Further, even though Plaintiff is proceeding *pro se*, and the Court should not ordinarily dismiss a *pro se* plaintiff's complaint without first affording him leave to amend, *see Gill v. Gilder*, No. 95 Civ. 7933, 1997 WL 419983, at *5 (S.D.N.Y. Jul. 28,1997), I recommend that the Court deny leave to amend in this case, as amendment would be futile, *see Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (upholding dismissal of *pro se* pleading and rejecting plaintiff's argument that she should be given leave to replead, where even a liberal reading of the complaint gave no indication that plaintiff either inadequately or inartfully pleaded an otherwise valid claim (citing *Hunt v. Alliance N. Am. Gov't Income Trust*, 159 F.3d 723, 728 (2d Cir. 1998))).

## CONCLUSION

For all the foregoing reasons, I respectfully recommend that Defendant's motion to dismiss the Complaint be granted, with prejudice.

Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule 72(b)(2) of the Federal Rules of Civil Procedure, the parties shall have 14 days from the date of this Report and Recommendation to file written objections. *See also* Fed. R. Civ. P. 6(a) and 6(d) (allowing three additional days where

15

service has been made by mail). Such objections, and any responses thereto, shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Richard J. Sullivan, United States District Judge, 500 Pearl Street, Room 640, New York, New York 10007, and to the chambers of the undersigned, 500 Pearl Street, Room 525, New York, New York 10007. Any requests for an extension of time for filing objections must be directed to Judge Sullivan. FAILURE TO OBJECT WITHIN 14 DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW. *Thomas v. Arn*, 474 U.S. 140 (1985); *IUE AFL–CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1054 (2d Cir. 1993); *Frank v. Johnson*, 968 F.2d 298, 300 (2d Cir. 1992); *Wesolek v. Canadair Ltd.*, 838 F.2d 55, 57-59 (2d Cir. 1988); *McCarthy v. Manson*, 714 F.2d 234, 237-38 (2d Cir. 1983).

Dated: New York, New York
November 13, 2012

Respectfully submitted,

DEBRA FREEMAN
United States Magistrate Judge

Copies to:

*Pro Se* Office, S.D.N.Y.

Mr. Edgardo Buitrago
117 Preston Avenue
West Harrison, NY 10604

Defendant's counsel (via ECF)

16